UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



Amado Rodriguez Sanchez,

    Petitioner,

–v–

Thomas Decker, *et al.*,

    Respondents.

18-cv-8798 (AJN)

OPINION & ORDER

ALISON J. NATHAN, District Judge:

Petitioner Amado Rodriguez Sanchez brought the Petition for a Writ of Habeas Corpus now before the Court pursuant to 28 U.S.C. § 2241, claiming that his prolonged detention without review violates the Fifth Amendment Due Process Clause and seeking his immediate release or a constitutionally adequate bond hearing. For the reasons that follow, the Court grants Rodriguez Sanchez's Petition and orders Respondents to provide him with a bond hearing before an Immigration Judge ("IJ"). At that bond hearing, the Government must bear the burden of demonstrating by clear and convincing evidence that he poses a flight risk or a danger to the community, and his ability to pay and alternative conditions of release must be taken into account when setting a bond.

I.    **BACKGROUND**

Rodriguez Sanchez is a 36-year-old citizen of the Dominican Republic. Pet. (Dkt. No. 3) ¶ 2. He has lived in the United States with his lawful permanent resident partner and two United States citizen children for the last decade, working as a landscaper for much of that time. *Id.* On December 14, 2017, he was placed in removal proceedings at the Varick Street Immigration

1

Court in New York, New York and has been detained since then primarily at the Bergen County Jail in Hackensack, New Jersey. Pet. ¶ 5. Because he is a noncitizen with a controlled substance conviction, Rodriguez Sanchez is subject to mandatory detention pursuant to 8 U.S.C. § 1226(c). Pet. ¶ 3; *see also* 8 U.S.C. § 1226.

Rodriguez Sanchez's first appearance before an IJ was scheduled for January 17, 2018, over a month after Immigration and Customs Enforcement ("ICE") first detained him. Pet. ¶ 29. At that hearing, he retained pro bono counsel through the New York Immigrant Family Unity Project and, through counsel, requested a brief adjournment for attorney investigation and preparation. *Id.* That request was granted, and his next hearing was scheduled for February 13, 2018. *Id.*

On February 9, 2018, Rodriguez Sanchez filed pleadings admitting the factual allegations against him and conceding the sole charge of removability; at the same time, he filed a Form I-589 Application for Asylum, Withholding of Removal, and Convention Against Torture based on past persecution and fear of future persecution on the basis of his political opinions were he to return to the Dominican Republic. Pet. ¶¶ 30–31. At his February 13 hearing, the IJ sustained the charge of removability, acknowledged receipt of the Form I-589, and scheduled a hearing on the merits of the application for April 20, 2018. Pet. ¶ 32. Though the April 20 hearing was scheduled for 8:30 a.m., the IJ did not take the bench until 11:15 a.m. and stopped the hearing 45 minutes later to break for lunch. Pet. ¶¶ 32–35. She asked counsel to return after lunch at 1 p.m., but after counsel returned, she informed them that she did not have time that afternoon to hear Rodriguez Sanchez's case. Pet. ¶¶ 35–36. Proceedings were then adjourned nearly four months to August 10, 2018, which the IJ said was the earliest date available. Pet. ¶ 36. Counsel

filed a motion to advance the hearing on May 23, 2018 but was informed on June 19, 2018 that it was denied. Pet. ¶¶ 37–38.

Between the April 20 and August 10 hearings, the Enforcement and Removal Operations branch of ICE unilaterally decided that it would no longer physically produce noncitizens from detention for in-person appearances at the Varick Street Immigration Court. Pet. ¶ 39. Three days before the August 10 hearing, counsel for Rodriguez Sanchez filed a motion to produce him to the Varick Street Immigration Court for the August 10 hearing; on August 10, the IJ acknowledged receipt of the motion but did not grant it. Pet. ¶¶ 40–41. The IJ instead attempted to connect to the Bergen County Jail via the video teleconference line but was unable to do so because, she indicated, the line was being used by another IJ at the time. Pet. ¶ 41. The IJ then inquired whether the Department of Homeland Security ("DHS") could produce Rodriguez Sanchez, and counsel for DHS said they could not. Pet. ¶ 42. The IJ asked counsel to return to the courtroom in 30 minutes for an update on the availability of the video teleconference line, and when they returned, she indicated that the line remained unavailable. *Id.* She then continued the hearing again to September 25, 2018. Pet. ¶ 43.

Though the September 25 hearing was again scheduled to begin at 8:30 a.m., the video teleconference line was not available until 9:40 a.m. Pet. ¶ 45. After two hours of testifying via video teleconference through a Spanish-language interpreter, Rodriguez Sanchez completed his direct testimony, and the IJ indicated that she would stop proceedings 5 minutes later, at 11:45 a.m. Pet. ¶ 46. She offered to adjourn to October 24, 2018 to complete testimony, but due to the availability of DHS counsel, the hearing was adjourned to November 16, 2018. Pet. ¶ 47.

That same day, Rodriguez Sanchez filed with this Court a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, claiming that his prolonged detention without

3

individualized review—totaling nearly 300 days at the time of filing of his Petition—violates due process and seeking his release or a constitutionally adequate bond hearing before an IJ. Pet. ¶¶ 3–4.

The IJ subsequently adjourned Rodriguez Sanchez's November 20 hearing to January 23, 2019 because DHS failed to produce him either physically or via video teleconference for that hearing. Dkt. No. 17 at 1. He was physically produced for the January 23 hearing, at which testimony was completed. Dkt. No. 23 at 1. However, because the IJ did not have time to render a decision on his application for relief, she adjourned proceedings once again to March 11, 2019. *Id.* At the March 11 hearing, the IJ ordered Rodriguez Sanchez removed. Dkt. No. 25 at 1. He subsequently appealed his removal order to the Board of Immigration Appeals ("BIA"), and on August 14, 2019, the BIA dismissed his appeal, rendering that order administratively final. *See* Dkt. No. 29 at 1; Dkt. No. 32-1 at 3. Following the BIA's dismissal, Rodriguez Sanchez filed a petition for review and motion for stay of removal with the Second Circuit. Both remain pending.

As of the date of this Opinion and Order, Rodriguez Sanchez has been in ICE custody since his December 14, 2017 arrest over two years ago, and at no point during his over two years of detention has he received an individual custody determination to assess whether he poses a flight risk or a danger to the community. Pet. ¶ 53.

## II. DISCUSSION

### A. Rodriguez Sanchez is Detained Pursuant to 8 U.S.C. § 1226(c), and thus his Petition is not Moot

Rodriguez Sanchez's pending petition and motion for stay of removal at the Second Circuit raise the question of whether he is now being detained pursuant to 8 U.S.C. § 1226 or 8 U.S.C. § 1231. Rodriguez Sanchez argues that the Second Circuit's analysis in *Hechavarria v.*

4

*Sessions*, 891 F.3d 49 (2d Cir. 2018)—and subsequent interpretations of that case by courts within this Circuit—indicates that his detention remains governed by 8 U.S.C. § 1226. Dkt. No. 38 at 1–4. Respondents, on the other hand, argue that because Rodriguez Sanchez's order of removal is administratively final, he is now being detained pursuant to 8 U.S.C. § 1231. Dkt. No. 36 at 7–12. They further argue that his Petition is moot as a result, because it only challenges his prolonged pre-removal-order detention under 8 U.S.C. § 1226, a statute pursuant to which he is no longer being detained. *Id.* For the reasons stated below, the Court concludes that Rodriguez Sanchez's detention is governed by 8 U.S.C. § 1226 and thus his Petition, which challenges his prolonged detention under that statute, is not moot.

When noncitizens are detained pending a decision on whether they are to be removed, the authority for their detention comes from 8 U.S.C. § 1226. However, once a final removal decision has been made and the removal period begins, the Government's detention authority comes from 8 U.S.C. § 1231. The Second Circuit has held that detention continues under § 1226 in cases where a detainee has filed a petition for review with the Second Circuit and the court has issued a stay of removal while it decides the merits of the petition. *See Hechavarria*, 891 F.3d at 54–56; *see also* 8 U.S.C. § 1231(a)(1)(B)(ii) (stating that the period of removal does not begin until the date of the court's final order "if a removal order is judicially reviewed and if the court orders a stay of the removal"). The question before the Court is thus whether the Government's forbearance policy in the Second Circuit, which prevents DHS from removing noncitizens while they have a petition for review and stay motion pending at the Second Circuit, should be treated like a judicially-ordered stay of removal, such that Rodriguez Sanchez's detention remains governed by § 1226.

Under the Second Circuit's decision in *Hechavarria*, because "Section 1231 assumes that the immigrant's removal is both imminent and certain," an immigrant is only detained pursuant to § 1231 if "no substantive impediments remain to the immigrant's removal." 891 F.3d at 55. Accordingly, the Second Circuit concluded in that case that § 1231 does not govern detention where the Second Circuit has issued a stay pending judicial review of the underlying removal order, because under such circumstances removal is not "inevitable." *Id.* at 56. While the Second Circuit left open the issue of whether the forbearance policy should be treated like a judicially-ordered stay of removal for purposes of § 1231, *id.* at 54 n.3, "the overwhelming majority of courts in this Circuit have found that the forbearance agreement amounts to a 'court ordered stay of the removal of the alien' and that detainees with a pending petition for review are detained pursuant to [8 U.S.C.] § 1226," *Falodun v. Session*, No. 6:18-cv-06133 (MAT), 2019 WL 6522855, at *5 (W.D.N.Y. Dec. 4, 2019) (quoting *Ranchinskiy v. Barr*, No. 6:19-cv-6348 (EAW), Dkt. No. 8 at 11 (W.D.N.Y. Nov. 8, 2019)); *see also, e.g., Thomas v. Whitaker*, No. 18-cv-6870 (FPG), 2019 WL 1641251, at *3 (W.D.N.Y. Apr. 16, 2019); *Fremont v. Barr*, No. 18-cv-1128 (LJV), 2019 WL 1471006, at *2–3 (W.D.N.Y. Apr. 3, 2019); *Alexandre v. Decker*, No. 17-cv-5706 (GBD), 2019 WL 1407353, at *5 (S.D.N.Y. Mar. 28, 2019); *Hemans v. Searls*, No. 18-cv-1154 (LJV), 2019 WL 955353, at *3 (W.D.N.Y. Feb. 27, 2019); *Sankara v. Whitaker*, No. 18-cv-1066 (LJV), 2019 WL 266462, at *4–5 (W.D.N.Y. Jan. 18, 2019). These courts have found that "just as in *Hechavarria*, there is a 'substantive impediment to [the petitioner's] deportation,' in the form of the forbearance policy." *Falodun*, 2019 WL 6522855, at *5 (quoting *Hechavarria*, 891 F.3d at 55). The Court finds the reasoning of these decisions persuasive and concludes that because Rodriguez Sanchez's removal is neither imminent nor certain so long as

his petition for review is pending in the Second Circuit and the forbearance policy remains in effect, his detention is governed by § 1226, not § 1231.

Respondents arguments to the contrary are unavailing. They rely primarily on pre-*Hechavarria* cases, *see* Dkt. No. 36 at 7–12 & n.7, and fail to engage with the "structure and logic" of § 1231, which, as discussed above, "assumes that an immigrant's removal is both imminent and certain," *Hechavarria*, 891 F.3d at 55. Of the courts within this Circuit that have considered what statute governs detention in cases in a similar posture, "almost none have [determined that § 1231 governs] *in the wake of the Second Circuit's decision in Hechavarria.*" *Falodun*, 2019 WL 6522855, at *5 (emphasis added) (quoting *Ranchinskiy*, Dkt. No. 8 at 12). In the one post-*Hechavarria* case Respondents point to as directly supporting their argument, another court in this District concluded that § 1231 governed detention in a two-sentence memo endorsement. *See Cazahuatl Torres v. Decker*, No. 18-cv-10026 (VEC), Dkt. No. 31 (S.D.N.Y. May 15, 2019) (finding only that "[t]he Court agrees with the United States that Petitioner's detention is now governed by 8 U.S.C. § 1231(a)(1)(A)-(B)(i)"). The Court does not find this authority—which likewise fails to engage with the "structure and logic" of § 1231—particularly persuasive, especially in light of the considerable authority to the contrary cited above.

The Court thus joins the growing consensus in this Circuit and concludes that Rodriguez Sanchez is detained pursuant to 8 U.S.C. § 1226(c). Because he remains detained pursuant to 8 U.S.C. § 1226(c), his Petition challenging his prolonged detention under that statute is not moot.

### B. Rodriguez Sanchez's Detention Under § 1226(c) Has Become Unreasonable and Unconstitutional, and He is Entitled to a Bond Hearing with Certain Procedural Protections

#### 1. Rodriguez Sanchez's Detention Under § 1226(c) Has Become Unreasonable and Unconstitutional

"[W]hether mandatory detention under § 1226(c) has become unreasonable, and thus a due process violation, must be decided using an as-applied, fact-based analysis." *Sajous v. Decker*, No. 18-cv-2447 (AJN), 2018 WL 2357266, at *10 (S.D.N.Y. May 23, 2018) (internal quotation marks and citation omitted). The factors the Court considers in determining whether an individual's detention has become unreasonable include the length of time he has been detained, whether he is responsible for that delay, and whether he has asserted defenses to removal. *Id.* at 10–11. Other factors that may be relevant include whether the individual's detention exceeds the time he spent in prison for the crime that rendered him removable, and whether he was detained at a facility that was meaningfully different from an institution for criminal detention. *Id.* at 11.

Applying the factors articulated above, the Court concludes here, as it did in *Sajous*, that "continued detention of the Petitioner without a bond hearing is unreasonable and unconstitutional," and "he is thus entitled to an individualized bond hearing." *Id.* at 12. First, Rodriguez Sanchez has now been detained for over two years, far longer than the six months considered presumptively reasonable. *See id.* at *10 ("In *Zadvydas*, the Court identified six months of detention as presumptively reasonable. Conversely, it noted 'that Congress previously doubted the constitutionality of detention for more than six months.' As a result, detention that has lasted longer than six months is more likely to be 'unreasonable,' and thus contrary to due process, than detention of less than six months.") (citations omitted). As explained at length above, with the exception of the initial brief adjournment of less than a month following his retention of pro bono counsel, *see* Pet. ¶ 29, all of the considerable delay Rodriguez Sanchez has experienced was attributable to immigration officials. *See supra* Section I. Furthermore, for much of that time, his asylum application was pending, Pet. ¶ 30–31, and he is now seeking

8

review of the denial of that application in the Second Circuit. Finally, he has been detained for the duration of the last two years primarily in the Bergen County Jail, Pet. ¶ 5, an institution for criminal detention.

Respondents themselves acknowledge that all of these factors weigh in favor of providing Rodriguez Sanchez a bond hearing, noting that "based on the specific facts and circumstances present in this case, this matter is not materially distinguishable from" *Sajous*, and conceding that they will "implement an order requiring a bond hearing if the Court [orders] one." Dkt. No. 36 at 20–21. Though they nonetheless argue, primarily in a footnote, *see id.* at 20 n.13, that *Sajous* should not be followed here, the Court does not find their argument persuasive. That case was decided less than two years ago, and Respondents do not point to changes in circumstance or legal landscape that undermine its rationale or provide reason for departing from the analysis set forth therein.

### 2. Due Process Requires a Bond Hearing with Certain Procedural Protections

Rodriguez Sanchez further argues that the bond hearing to which he is entitled must include certain procedural protections. *See* Dkt. No. 3 at 21–22. First, he argues that the Government must bear the burden of demonstrating by clear and convincing evidence that he poses a flight risk or a danger to the community. Second, he argues that his ability to pay and alternative conditions of release must be taken into account when setting a bond.

With respect to the allocation of the burden of proof, the Court concludes that the reasoning it recently articulated in *Medley v. Decker* applies with equal force to detention pursuant to § 1226(c). *See Medley v. Decker*, 18-cv-7361 (AJN), Dkt. No. 29 (S.D.N.Y. Dec. 11, 2019). In that case, this Court concluded that "at a bond hearing under § 1226(a), the Government . . . must bear the burden of establishing, by clear and convincing evidence, that [the

9

petitioner] poses a flight risk or a danger to the community." *Id.* at 5. It found that the Due Process Clause requires the

> Government [to] bear the burden . . . 'given the important constitutional interests at stake, and the risk of harm in the event of error.' The balance of the Government's interest in 'ensuring the appearance of aliens at future immigration proceedings' and 'preventing danger to the community,' and the individual's substantial interest in his physical liberty during the years it may take to resolve his immigration proceedings 'supports imposing the greater risk of error on the Government—specifically, by allocating to it the burden of proof.'"

*Id.* at 6–7 (citations omitted). The Court sees no reason "why the due process analysis should differ depending on the statutory context," because the "liberty interest is much the same." *Hernandez v. Decker*, No. 18-cv-5026 (ALC), 2018 WL 3579108, at *10 n.9 (S.D.N.Y. July 25, 2018) (requiring Government to bear the burden of proof by clear and convincing evidence at bond hearing where petitioner's detention was governed by § 1226(c)); *see also Fortune v. Decker*, No. 19-cv-9740 (AT), 2019 WL 6170737, at *6 (S.D.N.Y. Nov. 20, 2019) (same); *Constant v. Barr*, No. 19-cv-00182 (EAW), 2019 WL 4254078, at *9 (W.D.N.Y. Sept. 9, 2019) (same); *Arce-Ipanaque v. Decker*, No. 19-cv-1076 (JMF), 2019 WL 2136727, at *3 (S.D.N.Y. May 15, 2019) (same). Thus, the Court concludes that where, as here, a noncitizen's due process rights were violated as a result of unreasonably prolonged detention without a bond hearing, the Government must bear the burden of demonstrating by clear and convincing evidence that the noncitizen poses a flight risk or a danger to the community to justify continued detention.

The Court likewise "need not spill further ink" on the second issue. *Arce-Ipanaque*, 2019 WL 2136727, at *3 (noting, in light of Circuit consensus, that the court "need not spill further ink" on the question now before this Court). Numerous courts in this Circuit have "concluded that the Due Process Clause requires that an IJ consider ability to pay and alternative conditions of release in setting bond," *Hernandez*, 2018 WL 3579108, at *12 (internal quotation marks and alteration omitted), because "[a] bond determination that does not include consideration of

10

financial circumstances and alternative release conditions is unlikely to result in a bond amount that is reasonably related to the government's legitimate interests," *id.* (quoting *Hernandez v. Sessions*, 872 F.3d 976, 991 (9th Cir. 2017)). Indeed, courts in this District have uniformly adopted Judge Carter's reasoning in *Hernandez v. Decker*, and this Court does so too. *See, e.g., Fernandez Aguirre v. Barr*, No. 19-cv-7048 (VEC), 2019 WL 3889800, at *2–3 (S.D.N.Y. Aug. 19, 2019); *Arce-Ipanaque*, 2019 WL 2136727, at *3; *Gomes Herbert v. Decker*, No. 19-cv-760 (JPO), 2019 WL 1434272, at *4 (S.D.N.Y. Apr. 1, 2019); *Perez v. Decker*, No. 18-cv-5279 (VEC), 2018 WL 3991497, at *6 (S.D.N.Y. Aug. 20, 2018); *Brissett v. Decker*, 324 F. Supp. 3d 444, 454 (S.D.N.Y. 2018); *Lett v. Decker*, 346 F. Supp. 3d 379, 389 (S.D.N.Y. 2018).

Accordingly, the Court concludes that at Rodriguez Sanchez's bond hearing, the Government must bear the burden of demonstrating by clear and convincing evidence that he poses a flight risk or a danger to the community, and his ability to pay and alternative conditions of release must be taken into account when setting a bond.

### III. CONCLUSION

Rodriguez Sanchez's Petition is hereby GRANTED. Because the Court resolves this Petition on the papers, Rodriguez Sanchez's request for oral argument is DENIED.

Within seven calendar days of the date of this Opinion and Order, Respondents must provide Rodriguez Sanchez with a bond hearing before an IJ that is consistent with this Opinion and Order. Respondents have represented to the Court that they will "coordinate with the immigration court to schedule a bond hearing as expeditiously as possible," and the Court expects that they will do so. Dkt. No. 36 at 21. Should Respondents fail to provide Rodriguez Sanchez with the required bond hearing within seven calendar days, they must immediately release him.

11

The Clerk of Court is directed to close this case.

SO ORDERED.

Dated: December 23, 2019
New York, New York

_____
ALISON J. NATHAN
United States District Judge